```
1  MARK GOLDROSEN, CBN 101731
   255 Kansas Street, Suite 340
2  San Francisco, California 94103
   TEL: (415) 565-9600
3  FAX: (415) 565-9601

4  Attorneys for Defendant
   KEVIN VIDAL
5
```

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 4:20-MJ 71284-MAG |
|---|---|---|
| Plaintiff, | ) | DEFENDANT VIDAL'S |
| | ) | OPPOSITION TO UNITED STATES'S |
| vs. | ) | MOTION FOR DETENTION |
| | ) | |
| KEVIN VIDAL, | ) | Date: September 21, 2020 |
| | ) | Time: 10:30 a.m. |
| Defendant. | ) | Before: Hon. Alex G. Tse |
| _____ | ) | |

Defendant KEVIN VIDAL submits this opposition to the government's Motion for Detention. It is unclear whether the government is arguing that Mr. Vidal should be detained because it believes he is a danger to the community or because he is both a danger and a flight risk. In the motion's introduction, the government states it is moving to detain Mr. Vidal solely on the "grounds that he is a danger to the community." Motion at 2. Later, however, the motion changes course, stating that Mr. Vidal is "a danger and a flight risk." Motion at 4. The arguments advanced in the motion seem to only address whether Mr. Vidal is a danger. In any event, the government fails satisfy its burden that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

The defense is informed that Mr. Vidal is a lifelong resident of the Bay Area with substantial community ties, full-time employment, a local residence, and a minor child. He has never previously failed to appear in court, has no prior convictions, and did not commit

any crimes in the 14 months since the charged offense is alleged to have occurred. Mr. Vidal's mother and longtime friend are available to be sureties, and there are release conditions the Court can impose that will ensure his future appearances in court and release and the safety of the community.

## I. LEGAL STANDARDS

In general, the Bail Reform Act requires a Court to order the pretrial release of a defendant on personal recognizance or unsecured bond, unless "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(a), (b). If the Court determines that release on an unsecured bond will not reasonably ensure the defendant's appearance or will endanger others, the Court can fashion conditions of release that will satisfy these concerns.18 U.S.C. § 3142(c).

The government can request a detention hearing if a defendant has been charged with a crime involving possession of a firearm, as here. 18 U.S.C. § 3142(f)(1)(E). The government bears the burden of showing that the defendant is a flight risk by a "preponderance of the evidence" and a danger to the community by "clear and convincing evidence." *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

Further, the defendant's dangerousness "must be demonstrated in fact, not 'in theory.'" *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 U.S. Dist. LEXIS 60552, at 10*20-21 (N.D. Cal. Apr. 20, 2017) (quoting *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)). "[T]he relevant inquiry is whether the defendant will pose a risk of danger on release, not whether defendant's underlying crime posed a risk of danger to potential victims." *United States v. Shelby*, No. 2:17-CR-395 JCM, 2018 U.S. Dist. LEXIS 5157, at *7 (D. Nev. Jan. 11, 2018).

In assessing whether detention is warranted, the Court must consider (1) the nature

1  and circumstances of the offense charged; (2) the weight of the evidence against the
2  defendant; (3) the history and characteristics of the person; and (4) the nature and seriousness
3  of the danger to any person or the community that would be posed by the defendant's release.
4  18 U.S.C. § 3142 (g)(1)-(4). Detention is only warranted if the government establishes that
5  "no condition or combination of conditions will reasonably assure the appearance of the
6  person or the safety of the community." 18 U.S.C. § 3142(e)(1). Indeed, "[e]ven where a
7  defendant poses a danger, he must still be released if there is a 'condition or combination of
8  conditions [that] will reasonably assure ... the safety of any other person and the community.'
9  18 U.S.C. § 3142(e)." *United States v. Hir*, 517 F.3d 1081, 1091-92 (9th Cir. 2008).

The Bail Reform Act provides numerous conditions of release that the Court may impose and "[t]he wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985). The conditions are intended to "reasonably assure" the defendant's appearance and the safety of others, *id*.; the Bail Reform Act "does not seek ironclad guarantees." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992); *see also United States v. Barnett*, 986 F. Supp. 385, 400 (W.D. La. 1997) ("As much as it may be desirable to eliminate even this slight possibility of danger to the community, the law does not permit the court to require guarantees of safety before granting pretrial release."). "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2014).

**II. THE GOVERNMENT HAS NOT MET ITS BURDEN OF PROVING BY A PREPONDERANCE OF THE EVIDENCE THAT MR. VIDAL IS A FLIGHT RISK AND THAT NO CONDITIONS OF RELEASE CAN REASONABLY ASSURE HIS APPEARANCE**

The defense is informed that Mr. Vidal is 23 years old and has substantial community ties. He was born in Martinez and lived in Concord until age 10. At that time, Mr. Vidal and his family (mother and four younger siblings) moved to Bay Point. At age 16, Mr. Vidal became a boarding student at the Rite of Passage-Sierra Ridge Academy in San Andreas,

1  California. Upon graduating with a high school degree, he returned to the Bay Area, renting
2  his own apartment in Pittsburg. He has remained at that address for approximately five years.

3       Mr. Vidal is a member of Local 324 of the Laborers' International Union in Martinez.
4  Through the union, he has maintained full-time employment for approximately five years.

5       Aside from his mother and four younger siblings, Mr. Vidal has other close relatives
6  in the Bay Area. These include his grandmother and his four-year old daughter, who lives in
7  Antioch. Mr. Vidal and the mother of his daughter are currently involved in court
8  proceedings to resolve custody issues. Mr. Vidal's next court appearance is September 23,
9  2020, in Contra Costa Superior Court.

10       Mr. Vidal's travels outside the Bay Area have been very limited. On one occasion, he
11  took a vacation to visit his father in Mexico approximately two to three years ago. Mr. Vidal
12  will surrender any valid passport in his possession as a condition of his release.

13       The government's motion does not note any prior failures to appear in court by Mr.
14  Vidal. Mr. Vidal also does not have a history of mental illness and nothing in his background
15  suggests that he would be uncooperative on release or would fail to comply with the
16  conditions imposed by the Court.

17       The only factor that arguably weighs against Mr. Vidal not being a flight risk is that
18  he is charged with a crime that carries a maximum punishment of 10 years. That factor,
19  however, does not come close to outweighing all the circumstances suggesting Mr. Vidal will
20  remain in the community and comply with his release conditions while his case is pending.
21  He is heavily invested in maintaining his family ties, employment, apartment, and ongoing
22  attempt to obtain custody of his child.

**III. THE GOVERNMENT HAS NOT MET ITS BURDEN OF PROVING BY CLEAR AND CONVINCING EVIDENCE THAT MR. VIDAL POSES A CURRENT DANGER AND THAT NO CONDITIONS OF RELEASE CAN REASONABLY ASSURE SAFETY TO OTHERS**

26       In arguing that Mr. Vidal is a danger to the community, the government primarily
27  relies on the nature and circumstances of the charged offense and the weight of the evidence.
28  Motion at 5-7. These factors, however,"may be considered only in terms of the likelihood

that the person will fail to appear or will pose a danger to any person or to the community." *Motamedi*, 767 F.2d at 1408. "Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Id*.

While admittedly the charged offense is serious, it is only a single sale of firearms. There is no indication that Mr. Vidal suggested future sales to the buyers or that he claimed to have access to additional firearms. It is also not alleged that Mr. Vidal personally used or threatened anyone with the firearms, or that his possession of the firearms facilitated other crimes. The maximum punishment of ten years that he faces is less than many other crimes prosecuted in federal court.

The government's claim that there is overwhelming evidence against Mr. Vidal is a stretch. Mr. Vidal was not involved in the negotiations leading up to the alleged firearms sale. The alleged gun buyers were confidential informants whose credibility is questionable. CI-1 received pecuniary payments for his/her assistance and has prior convictions for a long list of felony and misdemeanor offenses. *See* Complaint at 3, n. 1. ATF CI-3 was working for with law enforcement for the purposes of judicial consideration in a pending federal case and compensation. He also has a prior felony conviction. *Id*. at n. 2. Additionally, it appears that unlike in many ATF cases involving illegal firearm sales, the transactions were not video recorded, only audio recorded. Motion at 7. In any event, as the government concedes, the strength of the evidence is the least important of the factors the Court should consider.

The government's argument is also flawed because it overlooks the pertinent inquiry. The motion emphasizes that the charged offense poses a risk of danger to others, but not that Mr. Vidal himself poses a risk of danger if released. Here, Mr. Vidal's history and characteristics demonstrate that his release on bail will not endanger the community. Most significantly, Mr. Vidal was not on probation, parole, or supervised release at the time of the charged offense and has not been previously convicted of a single crime.

In addition, almost 14 months have passed since the offense allegedly took place. There is no indication that during that time Mr. Vidal has lived anything other than a law

abiding life during which he worked full time as a laborer. It is the understanding of the defense that when Mr. Vidal was arrested on September 10, 2020, law enforcement agents searched both the home of Mr. Vidal's mother, where the sale allegedly took place, and Mr. Vidal's apartment. Neither search resulted in the seizure of any contraband or evidence suggesting Mr. Vidal's present or past involvement in criminal activity. The government has simply presented no "evidence to suggest that [Mr. Vidal] intends to commit additional criminal acts in the future." *United States v. Eischeid*, 315 F. Supp. 2d 1033, 1036-37 (D. Ariz. 2003).

In light of the above circumstance, the government has failed to meet its burden of establishing by a preponderance of the evidence that Mr. Vidal's release presents a current risk to any person in particular or the community at large.

Ultimately, "the probability and consequences of defendant's prospective acts must be balanced against the restraint on defendant's liberty as he is presumptively innocent." *United States v. Blauvelt*, No. WDQ-08-0269, 2008 U.S. Dist. LEXIS 87060, at *3 (D. Md. Oct. 28, 2008); *United States v. Thomas*, No. CCB-03-0150, 2006 U.S. Dist. LEXIS 3266, at *94 (D. Md. Jan. 13, 2006); *see also* 18 U.S.C. § 3142(j) ("Nothing in [the Bail Reform Act] shall be construed as modifying or limiting the presumption of innocence."). The government's concerns that Mr. Vidal could pose a risk upon release are too speculative to justify detention and fall far short of its burden to show danger "with a high degree of certainty." *Chimurenga*, 760 F.2d at 405. The government's concerns can be reasonably addressed by some combination of the conditions listed in Section 3142(c).

**IV.  MR. VIDAL HAS VIABLE SURETIES WHO WILL SIGN AN UNSECURED BOND**

Mr. Vidal has two viable sureties who will sign an unsecured bond to secure Mr. Vidal's appearance. The first surety is his mother, Rosalina Perez, who has been employed for more than four years at The Honey Baked Ham Company in Concord. The second surety is Mr. Vidal's lifelong friend, Gary Waters, who is employed as a steam fitter for Ocean Park Mechanical Company in Oakland. In addition, Mr. Vidal is amenable to any other conditions

1 | of release that the Court decides are appropriate.

## V. CONCLUSION

Because the government has failed to show by a preponderance of the evidence that Mr. Vidal is a flight risk and by clear and convincing evidence that the safety of the community cannot be reasonably assured upon Mr. Vidal's release, the government's motion for detention should be denied.

DATED: September 16, 2020         Respectfully submitted,


                             /s/ Mark Goldrosen
                             MARK GOLDROSEN
                             Attorney for Defendant KEVIN VIDAL