1    STEPHANIE M. HINDS (CABN 154284)
     Acting United States Attorney
2
     HALLIE HOFFMAN (CABN 210020)
3    Chief, Criminal Division

4    SAMANTHA SCHOTT BENNETT (NYBN 5132063)
     JONATHAN U. LEE (CABN 148792)
5    Assistant United States Attorneys

6        1301 Clay Street, Suite 340S
         Oakland, California 94612
7        Telephone: (510) 637-3680
         FAX: (510) 637-3724
8        Samantha.Schott@usdoj.gov
         Jonathan,Lee@usdoj,gov
9
     Attorneys for United States of America
10

11                      UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                           OAKLAND DIVISION

14
     UNITED STATES OF AMERICA,            )   CASE NO. CR 20-317-JSW-13
15                                        )
             Plaintiff,                   )
16                                        )   **UNITED STATES'**
         v.                               )   **SENTENCING MEMORANDUM**
17                                        )
     BRIAN ALVARENGA,                     )
18                                        )   Date:    August 3, 2021
             Defendant.                   )   Time:    1:00 p.m.
19                                        )   Before:  Hon. Jeffrey S. White
                                          )
20

21

22

23

24

25

26

27

28
     SENTENCING MEMORANDUM
     CR 20-317-JSW-13

## I.    INTRODUCTION

Defendant Brian Alvarenga will appear before this Court on August 3, 2021 for change of plea and sentencing for distribution of methamphetamine.  On May 29, 2020, defendant distributed 0.586 grams of methamphetamine to a confidential informant at the 1500 Monument Boulevard shopping plaza in Concord, California.  This location was no accident.  Defendant frequented the shopping plaza, along with his co-defendants, which they described as their "one stop shop" for the sale of controlled substances, such as cocaine, heroin, or methamphetamine.  Methamphetamine is a destructive, highly addictive controlled substance that wreaks havoc on its users and the community.  The Monument Boulevard Corridor of Concord has suffered the adverse effects of this defendant's illicit conduct for years.  Defendant planned his drug trafficking activity to avoid detection and prosecution, by keeping his on-hand supply limited.  However, this prosecution disrupted his ability to further consummate sales of drugs.  Due to the seriousness of defendant's criminal conduct, the need to protect the community, and the role of adequate deterrence in the prevention of future crimes of this nature, a sentence of 24 months of imprisonment and three years of supervised release is reasonable and appropriate.

## II.    FACTUAL BACKGROUND

### A.    Defendant's Offense Conduct

Defendant Brian Alvarenga is a documented, active member of the South Side Locos (SSL), a subset of the Sureños criminal street gang that operates in and around Concord, California.  The Sureños are a violent criminal organization, who swear allegiance to the Mexican Mafia, and whose members demonstrate their loyalty to the gang through violence and intimidation against both rival gangs and the non-gang affiliated community.  For more than a decade, defendant has been a member of the SSLs.  He has admitted to law enforcement that he is an active SSL member.  Law enforcement has conducted surveillance on defendant and observed him with other known gang members and has seen photographs depicting him displaying Sureño hand signs.  Defendant appears to have multiple gang-related tattoos, including "SSL" on his chest and three dots near his left eye in the shape of pyramid.

SSL has maintained a stronghold in Concord for over 25 years, particularly in the Monument Boulevard Corridor.  The Monument Boulevard corridor is the Sureño criminal street gang's main thoroughfare for narcotics and firearms trafficking.  Sureño subsets utilize the shopping center at 1500

SENTENCING MEMORANDUM
CR 20-317-JSW-13                                    1

1   Monument Boulevard to "post up" (i.e. hang out at a location) and sell narcotics or firearms.

2         Mr. Alvarenga is charged with distribution of 0.586 grams of methamphetamine at 1500

3   Monument Boulevard.  According to paragraphs 96-97 of the affidavit supporting the criminal

4   complaint, on May 29, 2020, a confidential informant (CI) went to 1500 Monument Boulevard seeking

5   to purchase methamphetamine.  After first approaching other co-defendants, including defendant

6   Gutierrez, who stated his supply was low, the CI approached defendants Alvarenga and Cano in the

7   parking lot.  When the CI informed Mr. Alvarenga that Mr. Gutierrez was out of drugs, defendant

8   Alvarenga responded that he did not have any "powder" (i.e., cocaine) but he had "stronger shit."  Mr.

9   Alvarenga's statement indicated that he had methamphetamine for sale.  When the CI told Mr.

10  Alvarenga that he wanted to purchase an ounce or two, defendant stated that he did not like to carry

11  large quantities, noting that he just "beat a sales case."  Defendant sold the CI a "dub" of

12  methamphetamine in exchange for $20.

13        **B.**     **Procedural History**

14        On September 17, 2020, a grand jury returned a nine-count Superseding Indictment, charging

15  Brian Alvarenga, along with Jose Ignacio Ochoa, Luis Cruz, Luis Ramirez-Carranza, Phabel Gutierrez,

16  Angel Magana, Ernesto Missiego, Christian Cervantes, Francisco Cano, Armando Navarro-Pinones,

17  Sheena Middleton, Luis Cabrera, Alexis Perez, and Kevin Vidal.  The Superseding Indictment charged

18  violations of 21 U.S.C. §846 and 841 (a)(1), (b)(1)(B)(viii) and (b)(1)(C)- Conspiracy to Distribute and

19  Possess with Intent to Distribute Heroin, Cocaine, and Methamphetamine (Count One); 21 U.S.C. §§

20  841(a)(1) and (b)(1)(B)(ii) – Possession with Intent to Distribute Cocaine (Count Two); 21 U.S.C. §§

21  841(a)(1) and (b)(1)(B)(i) – Possession with Intent to Distribute Heroin (Count Three); 21 U.S.C. §§

22  841(a)(1) and (b)(1)(B)(viii) – Possession with Intent to Distribute Methamphetamine (Count Four); 21

23  U.S.C. §§ 841(a)(1) and (b)(1)(C) – Possession with Intent to Distribute Fentanyl (Count Four); 18

24  U.S.C. § 924(c)(1)(A)(i) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count

25  Six); 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm and Ammunition (Count Seven); 21

26  U.S.C. §§ 841(a)(1) and (b)(1)(C) – Distribution of Methamphetamine (Count Eight); 21 U.S.C. §§

27  841(a)(1) and (b)(1)(C) – Distribution of Methamphetamine (Count Nine); 18 U.S.C. §§ 922(o) and 2 –

28  Transfer of Machinegun (Count Ten); and 26 U.S. C. §§ 5861(d) – Possession of Unregistered Firearm

SENTENCING MEMORANDUM
CR 20-317-JSW-13                           2

1    (Count Eleven). All the above noted defendants are charged with a Forfeiture Allegation, pursuant to 21

2    U.S.C. § 853, 18 U.S.C. § 924(d) and, 28 U.S.C. § 2461(c) – Criminal Forfeiture.  Mr. Alvarenga is

3    named only in Count Nine.

4          Defendant has been detained since his arrest.  Most recently, he moved for release from custody,

5    which motion the Court denied on March 18, 2021.  *See* Dkt. No. 236.

6          **C.       Defendant's Criminal History**

7          The PSR documents Mr. Alvarenga's six (6) prior felony convictions (PSR ¶¶ 57-61, 63), three

8    prior misdemeanor convictions (PSR ¶¶ 55-56, 62), numerous probation violations and/or revocations,

9    and other arrests (PSR ¶¶ 67-69, 72-92).  He has a felony conviction for assault with a deadly weapon in

10   2011.  PSR ¶ 57.  More recently, he has a felony conviction for possession of a controlled substance in

11   2018 when he was found with 45.2 grams of methamphetamine while in the company of two Sureños.

12   PSR ¶ 63.  According to his probation officer, defendant has failed to adhere to his conditions of

13   probation, refused to participate in programming to include substance abuse counseling, and provided

14   inaccurate contact information, such that he was not at the addresses he provided, the phone numbers he

15   provided did not work, and he failed to appear for meetings.  *See*, *e.g.*, PSR ¶¶ 57, 59, 61.  Finally,

16   defendant was on probation at the time of the offense conduct in this case.  PSR ¶ 65.

17   **III.    PENALTIES**

18         **A.       Statutory Penalty Ranges**

19         The maximum penalties for Count Nine in the Superseding Indictment, Distribution of

20   Methamphetamine in violation of 21 U.S.C. § 841(a)(1), are (a) a maximum prison term of 20 years; (b)

21   a maximum fine of $1,000,000; (c) a maximum supervised release term of life, a minimum supervised

22   release term of 3 years; (d) a mandatory special assessment of $100; (e) forfeiture; (f) potential

23   deportation; and (g) mandatory and discretionary denial of federal benefits upon conviction of drug

24   offenses, 21 U.S.C. § 862 and § 862a.

25         **B.       Guidelines Range**

26         The parties and Probation agree that 10 is the correct total offense level after acceptance, after

27   application of an additional departure for "global disposition" under U.S.S.G. § 5K2.0(a)(2)(B).  PSR ¶¶

28   44-52.  The government requests that the Court apply the global disposition departure, which will

SENTENCING MEMORANDUM
CR 20-317-JSW-13                                        3

1   conserve judicial and the parties' resources, in calculating the adjusted offense level and the guidelines

2   sentence.  Defendant's Criminal History Category is VI.  PSR ¶ 66.  Therefore, under the parties'

3   agreement, the guidelines imprisonment range is 24-30 months.

**IV.    LEGAL STANDARD**

5        The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

6   sentencing purposes identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th

7   Cir. 2008).  The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" *United*

8   *States v. Kimbrough*, 552 U.S. 85, 108 (2007) (quoting *United States v. Gall*, 552 U.S. 38, 49 (2007)),

9   and are to be kept in mind throughout the process.  *See Gall*, 552 U.S. at 50, n. 6.  After determining the

10  appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive

11  reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.

**V.     SENTENCING RECOMMENDATION**

13       **A.    The Section 3353(a) factors support a 24 month term of imprisonment**

14       Taking the Section 3553 factors into account, a term of imprisonment of 24 months is an

15  appropriate and just sentence in this case.

16                    **1.    Seriousness of the conduct, respect for the law, just punishment**

17       To begin with, distributing methamphetamine is serious criminal conduct that has lethal

18  consequences for users and communities.  Nat'l Inst. on Drug Abuse, "Methamphetamine Abuse and

19  Addiction," Nat'l Inst. of Heath Pub. 13-4210 (rev. Sept. 2013) at 1.[1]   Among its many harmful effects

20  on users, methamphetamine causes memory loss, aggression, psychotic behavior, cardiovascular

21  damage, malnutrition and severe dental problems.  *Id.*  And it is deadly, as overdose death statistics

22  demonstrate.  A 2019 study by the San Francisco Methamphetamine Task Force confirmed that

23  methamphetamine trafficking is a serious, worsening local problem in the Bay Area.  The task force's

24  2019 report estimated that thirty-nine percent of the estimated 24,500 people who inject drugs in San

25  Francisco used methamphetamine, and deaths caused by methamphetamine overdose rose from 1.8 to

---

[1] This report is available at https://www.drugabuse.gov/publications/research-reports/methamphetamine/letter-director, and the tabs associated with it (last accessed July 27, 2021).

SENTENCING MEMORANDUM
CR 20-317-JSW-13                                    4

14.6 per 100,000 people during 2008-2018, an increase of 711%.[2]  Among decedents experiencing homelessness, methamphetamine was the most commonly present substance (47%).  Methamphetamine use was also prevalent among those individuals needing emergency psychiatric care (47%), and among those with at least eight psychiatric holds, nearly 9 in 10 reported using methamphetamine (89.1%).

Trafficking in methamphetamine also causes very serious harm to communities.  "Beyond its devastating effects on individual health, methamphetamine abuse threatens whole communities, causing new waves of crime, unemployment, child neglect or abuse and other social ills," including increased transmission of infectious diseases, such as hepatitis and HIV/AIDS.  *Id.*  A 2009 report from the RAND Corporation estimated the national cost from methamphetamine use as approximately $23.4 billion.  *Id.*

Defendant distributed methamphetamine, exploiting the vulnerabilities of his potential customers to its highly addictive and destructive impact.  He did so while boasting that he avoided prosecution by keeping only a small supply on hand for transactions.  When asked initially about cocaine, defendant directed the transaction toward methamphetamine, citing its potency.  These statements demonstrate the planning and knowledge of someone intent on maintaining himself in the business of methamphetamine trafficking, and they belie defendant's claim that he is a small-time dealer held in the grip of addiction who distributed methamphetamine only to feed his addiction.

The recommended sentence will also promote respect for the law.  Here, defendant has continued to commit crimes while on probation, community supervision, and parole.  The PSR documents more than a dozen probation revocations.  They run the gamut, involving new criminal conduct, failures to appear, and violation of gang conditions.  Defendant was on probation when he committed the crime to which he will plead guilty.  This history reveals a pronounced lack of respect for the law.

The recommended sentence is a just punishment.  It is a guidelines sentence that holds Mr. Alvarenga accountable for his conduct while balancing his speedy acceptance of responsibility as part of a global disposition.  The 24-month term of imprisonment will punish him for his conduct, and then he will commence a three year term of supervised release, an important opportunity for him to continue any

---

[2] All data described in this paragraph can be found in this report, which is available at https://www.sfdph.org/dph/files/MethTaskForce/Meth%20Task%20Force%20Final%20Report_FULL.pdf (last visited July 27, 2021).

1  progress made toward rehabilitation while in BOP custody.

2           **2.**      **Protecting the community**

3       Mr. Alvarenga chose the Monument Corridor of Concord as his marketplace for the sale of

4  drugs.  Specifically, he distributed methamphetamine at 1500 Monument Boulevard, described by SSL

5  members as a "one stop shop" for their illicit drug sales.  The area in close proximity to 1500 Monument

6  Boulevard includes schools, parks, shopping places and places of worship.

7       According to Census records, there are approximately 9,675 residents living in close proximity

8  to 1500 Monument Boulevard.[3]  Nearly 20% of these residents live below the poverty level, with

9  median household incomes ranging from $27,464 to $61,750.[4]  A majority of residents in the area

10  identify as Hispanic.[5]

11       This is a vulnerable community with residents struggling to overcome financial difficulties while

12  working in local shops and businesses in close proximity to the defendant's illicit trafficking.  This

13  community needs the protection this Court can provide by imposing the recommended sentence.

14           **3.**      **Providing adequate deterrence**

15       The government's recommendation will promote the need for specific and general deterrence.

16  First, as to specific deterrence, the recommended sentence will address this defendant's lengthy criminal

17  history, which is replete with convictions, probation violations and revocations, failures to appear, bench

18  warrants, post release community supervision convictions, and a parole violation.  Defendant's

19  numerous prior convictions and other contacts with the criminal justice system did not deter him, and his

20  statements during the transaction show the need for specific deterrence.  As for general deterrence, the

21  recommended sentence will provide an important message to the defendant and other potential

22  wrongdoers that methamphetamine distribution in the Monument Corridor will not be tolerated by the

23

24       [3] Demographic data including census block data available at http://www.city-

25  data.com/zips/94520.html (last accessed July 27, 2021).

26       [4] According to 2019 data, the median household income in California was $80,440.
https://datausa.io/profile/geo/california#:~:text=Median%20Household%20Income,-%2475%2C277&text=Households%20in%20California%20have%20a,represents%20a%204.84%25%2

27  0annual%20growth (last accessed July 27, 2021).

28       [5] In the 94520 zip code, approximately 53% of residents and 77% of public school pupils
identify as Hispanic. https://www.zipdatamaps.com/94520 (last accessed July 27, 2021).

SENTENCING MEMORANDUM
CR 20-317-JSW-13                                          6

1    Court.  The government requests that the Court impose the recommended sentence to deter this

2    defendant and any other potential wrongdoer from distributing methamphetamine.

3            **4.       Characteristics of the defendant**

4            Mr. Alvarenga, age 31, is not a youthful offender.  He is a native of Walnut Creek who has lived

5    in the East Bay near the Monument Boulevard Corridor his entire life.  He is a high school graduate who

6    is bilingual in English and Spanish, and he has work experience to include the retail and food service

7    sectors.  Although his family provided for his needs, the PSR describes other adverse childhood

8    experiences, including his parents' divorce, the murders of friends, and the death of his grandmother.

9    When asked to complete a questionnaire to document some of these experiences, however, defendant

10   did not provide a completed assessment.  Although he is a documented gang member with gang-related

11   tattoos, the PSR describes additional tattoos that Mr. Alvarenga declined to discuss.  The PSR

12   documents Mr. Alvarenga's consistent pattern over the past decade of probation violations, community

13   supervision violations, failures to appear, and overall lack of amenability to supervision.  According to

14   the PSR, Mr. Alvarenga has used methamphetamine daily for most of his adult life.  The government's

15   recommended sentence takes into account this defendant's history and characteristics.

16           **5.       Need for training, care, or other correctional treatment**

17           The PSR indicates Mr. Alvarenga would benefit from participation in RDAP while in BOP

18   custody.  The government concurs.  The recommended sentence will impose the first federal term of

19   imprisonment on Mr. Alvarenga, making RDAP an option for him.  There may be additional programs,

20   such as vocational training, from which he would also benefit.

21   **B.     Supervised Release**

22           The government respectfully requests that the Court sentence the defendant to a term of three (3)

23   years of supervised release.  The government also respectfully requests that the Court impose the

24   suspicionless search condition in the plea agreement as part of the sentence.  The offense conduct and

25   defendant's criminal history both demonstrate the need for this condition upon his release.

26   **VI.    CONCLUSION**

27           The government requests that the Court impose the recommended sentence of 24 months

28   imprisonment, followed by a 3-year term of supervised release, a fine to be determined by the Court;

SENTENCING MEMORANDUM
CR 20-317-JSW-13                                              7

1  and a $100 special assessment.

2  DATED:  July 27, 2021                                    Respectfully submitted,

3

4                                                           STEPHANIE M. HINDS
                                                            Acting United States Attorney

5                                                           ___/s/_____

6                                                           JONATHAN U. LEE
                                                            SAMANTHA SCHOTT BENNETT

7                                                           Assistant United States Attorneys

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SENTENCING MEMORANDUM
CR 20-317-JSW-13                                  8