STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

SAMANTHA BENNETT (NYBN 5132063)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
samantha.bennett@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERNESTO MISSIEGO,<br><br>Defendant. | CASE NO. 20-CR-00317-06 JSW<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing Date: January 25, 2022<br>Hearing Time: 9:30 a.m.<br>Before: Hon. Jeffrey S. White |

## I. INTRODUCTION

Defendant Ernesto Missiego will appear before this Court on January 25, 2022, for change of plea and sentencing for distribution of methamphetamine. The government submits this sentencing memorandum to advise the Court of its sentencing recommendation, should the defendant enter a guilty plea as anticipated. The government recommends that the Court sentence the defendant to a low-end Guidelines term of imprisonment of 57 months[1] and three years of supervised release to follow. The

[1] The government anticipates that the defendant will ask the Court to find that his criminal history category is overstated, and that he should be sentenced as if his criminal history category were II rather than III. The government takes no position on this request. Consistent with its plea agreement, if the Court finds that the defendant should be sentenced at criminal history category II, the government will recommend that the Court impose a sentence of 51 months.

government submits that this sentence is sufficient but not greater than necessary to meet the goals of sentencing.

## I. FACTUAL BACKGROUND

### A. Defendant's Offense Conduct

In 2019 and 2020, the government investigated the activities of the South Side Locos (SSL), a subset of the Sureños criminal street gang that operates in and around Concord, California. During the course of this investigation, the government observed the defendant, a documented SSL member, frequently hanging out in the parking lot at 1500 Monument Boulevard. On February 12, 2020, a buyer working with the government met the defendant in the parking lot and coordinated the purchase of methamphetamine. The defendant provided the buyer with a sample of the methamphetamine to vouch for its quality, and advised that he had a pistol he could sell the buyer as well. The defendant and the buyer scheduled to meet later that same day in the parking lot. After obtaining methamphetamine and the firearm from one or more co-conspirators, the defendant met with the buyer and sold 20.937 grams pure methamphetamine and a Ruger pistol to the buyer in exchange for cash.

Around the same time, another buyer was attempting to purchase a firearm from co-conspirator Angel Magaña. Magaña gave the buyer the defendant's phone number, advising that the defendant would be able to help him. On February 12, 2020, the buyer contacted the defendant and the defendant advised he had just sold the Ruger pistol, but that he had a 1911-style firearm for sale, which the buyer could see on Magaña's Instagram story (which depicted both Magaña and the defendant, as well as the firearm). The defendant agreed to sell the 1911-style firearm and methamphetamine to the buyer, and they met at the parking lot at 1500 Monument Boulevard. The defendant then sold the 1911-style firearm to the buyer in exchange for cash, but advised that he would need to get the methamphetamine from another source. The buyer declined to wait.

The defendant was originally charged in the Superseding Indictment with Conspiracy to Distribute Methamphetamine, Cocaine, and Heroin, between April 2019 and May 2020. The defendant turned 18 in January 2020, and went back into local custody no later than April 2020 for probation violations, where he remained until he was first produced before this Court on a writ on or about April 2, 2021. Because the defendant's involvement in the instant criminal conduct as an adult was significantly

limited in time, on or about January 13, 2022, the government filed an Information, charging the defendant with Distribution of Methamphetamine, based on his February 12, 2020, conduct.

## II. PENALTIES

### A. Statutory Penalty Ranges

The maximum penalties for the charged offense, Distribution of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), are (a) a maximum prison term of 20 years; (b) a maximum fine of $1,000,000; (c) a maximum supervised release term of life, a minimum supervised release term of 3 years; (d) a mandatory special assessment of $100; (e) forfeiture; and (f) mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. § 862 and § 862a.

### B. Guidelines Range

The government requests that the Court apply the proposed two-level downward departure for global disposition pursuant to U.S.S.G. § 5K2.0(a)(2)(B), which will conserve judicial and the parties' resources, in calculating the adjusted offense level and the guidelines sentence. Accordingly, the parties agree that taking these two factors into consideration, the defendant's total offense level is 23, including the two-level departure. PSR ¶ 108. The U.S. Probation Officer has calculated the defendant's Criminal History Category (CHC) at III. PSR ¶ 64. The government anticipates that the defendant will likely ask the Court to find that the defendant's CHC is overstated, and that his CHC is more accurately described as II. The government takes no position on this issue, and defers to the Court.[2]

The guidelines imprisonment range for offense level 23 and CHC III is 57-71 months. The guidelines imprisonment range for offense level 23 and CHC II is 51-57 months.

## III. LEGAL STANDARD

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the sentencing purposes identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Kimbrough*, 552 U.S. 85, 108 (2007) (quoting *United States v. Gall*, 552 U.S. 38, 49 (2007)),

[2] As noted above, if the Court determines that the defendant's criminal history category is overstated, the government will adjust its sentencing recommendation to the low-end of the applicable Guidelines range, consistent with its promise contained in the plea agreement.

and are to be kept in mind throughout the process. *See Gall*, 552 U.S. at 50, n. 6. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

## IV. SENTENCING RECOMMENDATION

Taking the Section 3553 factors into account, a low-end Guidelines sentence of 57 months' imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.

### A. The nature and circumstances of the offense merit a low-end Guidelines sentence

The defendant distributed methamphetamine, exploiting the vulnerabilities of his potential customers to its highly addictive and destructive impacts. Distributing methamphetamine is serious criminal conduct that has lethal consequences for users and communities. Nat'l Inst. on Drug Abuse, "Methamphetamine Abuse and Addiction," Nat'l Inst. of Heath Pub. 13-4210 (rev. Sept. 2013) at 1.[3] The defendant also sold multiple firearms to buyers. This Court is well aware of the threat firearms pose in our community, especially when sold by unlicensed dealers who sidestep the background check requirements to sell firearms to individuals who Congress determined should be prohibited from obtaining firearms because of the danger they pose to the community.

The defendant and most of his co-conspirators spent substantial amount of time loitering and selling drugs at 1500 Monument in Concord. In coopting this shopping center and nearby locations for their own illicit use, the defendant and his co-conspirators created a hostile and intimidating environment at the shopping center, deprived the community of its use and enjoyment, and hurt the financial prospects of the business owners who had lawfully set up shop at the shopping center.

### B. The defendant's history and characteristics, the need to promote respect for the law, and the need for general and specific deterrence merit a low-end Guidelines sentence

The defendant is only 20 years old, but he has had multiple significant criminal contacts, including a serious felony juvenile adjudication in 2017 for Conspiracy. In that case, the defendant brandished a 10-inch long knife at a fruit vendor in order to avoid payment and steal the vendor's cart.

[3] This report is available at https://www.drugabuse.gov/publications/research-reports/methamphetamine/letter-director, and the tabs associated with it (last accessed July 27, 2021).

The defendant was sentenced to probation, but as described in further detail in paragraph 60 of the PSR, the defendant was noncompliant with his supervision and suffered further sentencing consequences as a result.[4]

Significantly, Mr. Missiego is a proud Sureño gang member, and this affiliation appears to have motivated much of his conduct both in this case, and in the past. He referred to himself as a Sureño member when introducing himself to a buyer, using his moniker "Lil Neto," and he was repeatedly observed associating with other Sureño gang members during the course of this investigation, both in-person at 1500 Monument and in social media posts. His criminal history involves multiple incidents motivated by his gang affiliation, including both while serving his sentence for the 2017 adjudication, as well as at another arrest for violent conduct described in paragraph 66 of the PSR. The defendant's conduct in the instant case – which occurred while he was on probation for the 2017 adjudication – as well as his conduct while serving his sentence in that matter make clear that the defendant is not amenable to community supervision, and will continue to pose a danger to the community.

A low-end Guidelines sentence of 57 months is thus a just punishment for this defendant, and one which will promote respect for the law, and will deter both Mr. Missiego and others from peddling in destructive substances like methamphetamine, or from endangering the community by dealing in firearms. It is a guidelines sentence that holds Mr. Missiego accountable for his conduct while balancing his speedy acceptance of responsibility as part of a global disposition. The recommended sentence will further provide an important message to the defendant and other potential wrongdoers that methamphetamine distribution in this community will not be tolerated by the Court. The government requests that the Court impose the recommended sentence to deter this defendant and any other potential wrongdoer from distributing methamphetamine and firearms.

## V. CONCLUSION

The government requests that the Court impose a low-end Guidelines term of imprisonment,

---

[4] Because the defendant was a minor at the time of the conviction, the information regarding his conduct while on probation was provided by the Contra Costa County Juvenile Court pursuant to a protective order. Accordingly, the government will refer in only general terms to the defendant's criminal history in this publicly-filed sentencing memorandum, but notes that the U.S. Probation Officer has described the defendant's history in detail for the Court's review in the under-seal PSR.

followed by a three-year term of supervised release, and a $100 special assessment.

DATED: January 18, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/ *Samantha Bennett*

SAMANTHA BENNETT
Assistant United States Attorney