STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JONATHAN U. LEE (CABN 148792)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Facsimile: (415) 436-7027
jonathan.lee@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS CRUZ,<br><br>Defendant. | CASE NO. CR 20-317-JSW-2<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: March 21, 2023<br>Time: 9:30 a.m.<br>Before: Hon. Jeffrey S. White |

## I. INTRODUCTION

Defendant Luis Cruz will appear before this Court on March 14, 2023, for sentencing for conspiring to distribute controlled substances, in his case 2,216 grams of actual methamphetamine in multiple transactions in various locations in Concord, California during a six-month period in 2019. In one of those transactions, defendant sold a privately made Glock style handgun along with a pound of methamphetamine. On another occasion, he was present when a co-defendant sold a firearm and a controlled substance. Balancing the offense conduct against the defendant's criminal history and post-arrest conduct, the government recommends a term of 108 months imprisonment followed by four years of supervised release. The government submits that this sentence is sufficient but not greater than necessary to meet the goals of sentencing.

## II. FACTUAL BACKGROUND

### A. Defendant's Offense Conduct

In 2019 and 2020, the government investigated the activities of the South Side Locos (SSL), a subset of the Sureños criminal street gang that operates in and around Concord, California. Over the course of several months in 2019, on multiple occasions and various locations, Mr. Cruz personally sold methamphetamine and a firearm. The locations for these transactions, described in the chart below, were a parking lot of an open space recreational park located at 3701 Treat Boulevard in Concord, a co-defendant's residence in Concord, and a co-defendant's apartment complex in Concord. The two residential locations were in the vicinity of 1500 Monument Boulevard in Concord, California, which the Court has heard much about during prior proceedings in this case. The chart summarizes the discussion in the PSR of the discovery produced regarding each of the listed transactions. *See* PSR ¶¶ 28-36.

| Date | Location | Transaction |
|---|---|---|
| 4/22/2019 | 3701 Treat Boulevard, Concord | 55.1 grams of methamphetamine for $500 |
| 5/8/2019 | 3701 Treat Boulevard | 111.4 grams of methamphetamine for $900 |
| 5/9/2019 | Outside co-defendant Ramirez-Carranza's residence in Concord | P80 handgun for $1,000 and 26.8 grams of pure methamphetamine for $300; Cruz was present |

| | | |
|---|---|---|
| 5/29/2019 | 3701 Treat Boulevard | 223.3 grams of methamphetamine for $1,900 |
| 7/3/2019 | Outside co-defendant Gutierrez's apartment complex in Concord | 56 grams of methamphetamine |
| 7/16/2019 | 3701 Treat Boulevard | 445.7 grams of methamphetamine for $3,200 |
| 9/6/2019 | 3701 Treat Boulevard | One pound of methamphetamine for $2,800 and a "ghost" Glock style handgun for $1,300 |
| 9/6/2019 | 3701 Treat Boulevard | A second pound of methamphetamine for $2,800 on this date. The total net weight of methamphetamine sold by the defendant was 892.2 grams |
| 10/30/2019 | 3701 Treat Boulevard | 446 grams of methamphetamine for $2,850 |

## III. PENALTIES

### A. Statutory Penalty Ranges

Defendant Cruz is charged in Count One, Conspiracy to Distribute Cocaine, Heroin, and Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii), and 841(b)(1)(C). The maximum penalties for this offense are (a) a minimum term of imprisonment of 5 years, and a maximum prison term of 40 years; (b) a maximum fine of $5,000,000; (c) a maximum supervised release term of life, a minimum supervised release term of 4 years; (d) a mandatory special assessment of $100; (e) forfeiture; and (f) mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. § 862 and § 862a.

### B. Guidelines Range

The United States requests that the Court apply the proposed two-level downward departure for global disposition pursuant to U.S.S.G. § 5K2.0(a)(2)(B), which will conserve judicial and the parties' resources, in calculating the adjusted offense level and the guidelines sentence. Accordingly, the parties agree that taking this two-level reduction into consideration, the defendant's total offense level is 31, including the two-level departure. PSR ¶ 63, fn. 2. The U.S. Probation Officer has calculated the defendant's Criminal History Category (CHC) as I.

The guidelines imprisonment range for offense level 31 and CHC I is 108-120 months. The parties agree on this calculation but reserve their arguments about safety valve eligibility, discussed below.

**C. Safety Valve Issue**

Although the parties agreed on the guidelines calculations set out above, their agreement contemplated that the defense may argue Mr. Cruz's safety valve eligibility. The government does not agree that he is eligible for the reasons set forth below.

Title 18 U.S.C. § 3553(f) limits the applicability of statutory minimum sentences in certain cases. The eligibility criteria are set forth at 18 U.S.C. § 3553(f) (and U.S.S.G. § 5C1.2 for guidelines purposes), and address: (1) the defendant's criminal history; (2) the defendant's use of violence or threats, or possession of a firearm or other dangerous weapon; (3) whether the offense resulted in death or serious bodily injury to any person; (4) the defendant's role in the offense; and (5) whether, by the time of the sentencing hearing, the defendant has truthfully disclosed to the government all information and evidence that the defendant has about the offense and offenses that were part of the same course of conduct or of a common scheme or plan.

With respect to the requirement that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense," the commentary specifies that this language limits the defendant's accountability to his own conduct and conduct that he aided and abetted in connection with the offense of conviction and his relevant conduct. U.S.S.G. § 5C1.2(a)(2); U.S.S.G. § 5C1.2 cmt. n.3–4.

Here, Mr. Cruz possessed a firearm himself, one that he sold along with methamphetamine, and he aided and abetted a co-defendant's sale of a firearm on a second occasion. These transactions are documented in the PSR.

1. On September 6, 2019, Mr. Cruz sold a pound of methamphetamine and a "ghost" Glock style handgun, in the first of two transactions that day. PSR ¶ 35.

2. On May 9, 2019, Mr. Cruz was present for the sale of a P80 handgun and 27 grams of methamphetamine. PSR ¶ 30.

In the September 6, 2019 transaction, in particular, Mr. Cruz "possess[ed] a firearm…in

connection with the defense" when he arrived at the transaction location, got in the vehicle with the CI, and produced the methamphetamine and firearm to complete the sale. The transaction was recorded. Within two minutes of entering the vehicle, Mr. Cruz negotiated the sale of the methamphetamine and the firearm. He touted the qualities of the firearm, namely that it was a "ghost" Glock which he described as more valuable because it could not be traced. On this transaction alone, he is ineligible for safety valve.

In the May 9, 2019, transaction, Mr. Cruz was present for the sale of methamphetamine and a privately made firearm. This transaction occurred in front of co-defendant Ramirez-Carranza's home in Concord, and it was also documented by recording. Ramirez-Carranza delivered the drugs and gun to a vehicle parked in front of his home, while Mr. Cruz and another co-defendant Jose Ochoa sat in a nearby vehicle. At one point, Mr. Cruz got out of the vehicle and approached the CI to discuss briefly possible future transactions. Mr. Cruz's presence aided and abetted the sale of the handgun, providing a separate basis for his ineligibility for safety valve.

As a result, the United States contends that the defendant is ineligible for the safety valve.

## IV. LEGAL STANDARD

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the sentencing purposes identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Kimbrough*, 552 U.S. 85, 108 (2007) (quoting *United States v. Gall*, 552 U.S. 38, 49 (2007)), and are to be kept in mind throughout the process. *See Gall*, 552 U.S. at 50, n. 6. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

## V. SENTENCING RECOMMENDATION

Taking the Section 3553 factors into account, a sentence of 108 months imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.

### A. The nature and circumstances of the offense justify the recommended sentence

This defendant distributed the largest quantities of methamphetamine in this case, and he sold a personally made firearm in one transaction. He sold methamphetamine on multiple occasions over a six

month period in 2019. As noted above, he appeared to understand the market value of a personally made firearm, when he commented during the September 6, 2019 transaction that such "ghost" guns were more valuable because they could not be traced.

This conduct harmed the community, and the defendant knew it. Methamphetamine sales exploit the vulnerabilities of potential customers to its highly addictive and destructive impacts. Illicit firearms sales promote violent conduct, as customers of such sales are as a general matter unable to purchase firearms in legitimate transactions.

This defendant engaged in his offense conduct in the midst of the community, both in residential settings such as his co-defendants' residences in Concord and at a parking lot used by community members to enjoy recreation at a large open space park. These settings were near other residents, schools, shopping areas, and parks.

There is no dispute that illicit sales of controlled substances and firearms is serious conduct. For example, distributing methamphetamine has lethal consequences for users and communities; according to the National Institute on Drug Abuse, methamphetamine is the controlled substance that "most contributes to violent crime." Nat'l Inst. on Drug Abuse, "Methamphetamine Abuse and Addiction," Nat'l Inst. of Heath Pub. 13-4210 (2013, rev. 2019, 2021) at 1.[1] Firearms pose a well-known threat of violence, especially when sold by unlicensed sellers who sidestep the background check and registration requirements. *See, e.g.*, *United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (Congress passed Section 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship"); *United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir. 2004) ("danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute.").

Defendant's conduct increased the risk of harm in Concord, a community already struggling with violent crime. According to the FBI's 2016 crime data, Concord ranked 82nd in the top 100 municipalities in California for violent crime, along with three other Contra Costa County communities

---

[1] This report is available at https://www.drugabuse.gov/publications/research-reports/methamphetamine/letter-director, and the tabs associated with it (last accessed Mar. 14, 2023).

– Antioch, Pittsburg and Richmond, which ranked 20th, 59th, and 6th, respectively.[2] The FBI reported 447 violent crimes in 2016 in Concord, a city of 129,000, a rate of 1 violent crime per 290 Concord residents.[3] Here, defendant's conduct enlarged the danger to the community because not only did he sell a highly addictive and deadly controlled substance, he also sold firearms.

**B. The defendant's history and characteristics, the need to promote respect for the law, and the need for general and specific deterrence merit the recommended sentence**

The recommended sentence balances the aggravating and mitigating sentencing factors in this case. First, the offense conduct ranks this defendant at the top of his co-defendants in terms of quantity of methamphetamine sold. He sold a firearm along with methamphetamine in one transaction, and was present for the sale of a firearm and drugs on another occasion. This combination of offense conduct is the primary aggravating sentencing factor.

On the other hand, Mr. Cruz has little to no prior criminal history (pending the outcome of the Contra Costa murder case charging him with conduct in 2015). Furthermore, his post-arrest conduct is another mitigating factor. For example, Mr. Cruz agreed at an early point to accept responsibility, and the group disposition of which he is a part freed up government resources for use in other matters. Taking these mitigating factors into account, the recommended sentence does not promote unwarranted sentencing disparities, even though this defendant sold larger quantities of controlled substances than did other defendants.

A sentence of 108 months imprisonment is thus a just punishment for this defendant, will promote respect for the law, and will deter both Mr. Cruz and others from peddling in destructive substances like methamphetamine and Glock-style handguns. It will hold Mr. Cruz accountable for his conduct while balancing his speedy acceptance of responsibility as part of a global disposition. The recommended sentence will further provide an important message to the defendant and other potential wrongdoers that methamphetamine distribution in this community will not be tolerated by the Court. The government requests that the Court impose the recommended sentence to deter this defendant and

---

[2] "Report: Four Contra Costa cities make list of 100 most dangerous in California," Contra Costa Herald, July 24, 2018). http://contracostaherald.com/07241803cch/ (last accessed Mar. 14, 2023).

[3] Federal Bureau of Investigation, 2016 Crime in the United States, Table 6. https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/tables/table-6/table-6-state-cuts/california.xls (last accessed Mar. 14, 2023).

any other potential wrongdoer from distributing methamphetamine and firearms.

## VI. CONCLUSION

The government requests that the Court impose the recommended sentence of 108 months imprisonment, followed by a four-year term of supervised release, and a $100 special assessment.

DATED: March 14, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

__/s/_________________________
JONATHAN U. LEE
Assistant United States Attorney